FERGUSON et al. v. MANSFIELD et al.
(No. 7671.)

(Court of Civil Appeals of Texas. Galveston.
July 3, 1919. Rehearing Denied Oct. 9,
1919.)

1. PLEADING ⬥324—COMPLAINT NOT INSUFFICIENT FOR INDEFINITENESS OF ITEMIZED BILL ATTACHED.

A petition was not insufficient in that itemized bill of certain expenses attached thereto did not on its face state purpose for which the several amounts were expended, nor the date of each such expenditure, such particularity not being necessary where the general purpose of expenditures was alleged, and it was stated that each and all of them were made at the special instance and request of defendant.

2. JOINT ADVENTURES ⬥5(2)—EVIDENCE IN ACTION FOR ACCOUNTING SHOWING PROPER CHARGES UNDER CONTRACT.

In an action by one jointly interested in a contract of sale of land, evidence *held* sufficient to show that all expenditures for which reimbursement was claimed were made in proving title to the land, and, under the provisions of a contract entered into by the parties, were proper charges against 'the proceeds of the sale of the land.

3. APPEAL AND ERROR ⬥1040(11)—OVERRULING EXCEPTION TO PARAGRAPH OF PETITION HARMLESS WHERE NO RECOVERY UNDER IT HAD.

In an action to recover money by one jointly interested in a contract for sale of land, error of court in failing to sustain exceptions to a paragraph of petition in which plaintiff claimed a deduction from an amount charged against the joint fund by defendant was harmless, where such deduction was not allowed by the court.

4. JOINT ADVENTURES ⬥4(1)—PURCHASE OF CLAIM BY ONE PARTY AT DISCOUNT INURES TO JOINT BENEFIT.

Where plaintiff and defendant, jointly interested in a contract of sale of land, agreed to the payment of $6,000 fees to a certain attorney for services rendered in the transaction, but prior thereto defendant, to whom the transaction of the business was intrusted, had purchased the claim of the attorney for a less amount, the plaintiff was entitled to recover from the proceeds of the sale one-half difference between $6,000 and what defendant actually paid the attorney, plaintiff at the time he agreed to the payment of such fee not having knowledge that defendant had settled with the attorney.

5. JOINT ADVENTURES ⬥4(2)—MEASURE OF DAMAGES FOR FAILURE TO PAY MONEY AS AGREED.

Where plaintiff and defendant, jointly interested in a fund placed in a bank, entered into a contract whereby one of them was given control thereof for the purpose of making payment of claims of certain third persons, such fund was a special fund, and, when defendant refused to apply it in accordance with the agreement, he did more than breach an ordinary contract for the payment of money in discharge of debt, and should be held liable for all loss directly occasioned by his breach of contract, and recovery should not be limited to the principal sum, with interest.

6. JOINT ADVENTURES ⬥5(1)—PARTIES REPRESENTED BY ATTORNEY IN FACT NOT NECESSARY PARTIES TO ACCOUNTING.

Where a fund was placed in bank for a certain purpose, and was to be divided between plaintiff and defendant individually, and for other persons for whom they were respectively attorneys in fact, the other persons for whom plaintiff was attorney in fact were not necessary parties to an action by plaintiff to recover his and their shares.

Error from District Court, Harris County; Wm. Masterson, Judge.

Suit by H. P. Mansfield against James E. Ferguson and others. From an adverse judgment, the named defendant and another bring error. Affirmed.

Love & Fouts, of Houston, for plaintiffs in error.

L. B. Moody, Lewis R. Bryan, and Kittrell & Kittrell, all of Houston, for defendants, in error.

PLEASANTS, C. J. This suit was brought by H. P. Mansfield against the appellant James E. Ferguson and others to recover various sums of money, aggregating $13,883, and alleged to be plaintiff's interest in the proceeds of the sale of lands jointly owned and sold by plaintiff and the said appellant.

The evidence shows that on and prior to January 14, 1910, appellant Ferguson and appellee Mansfield held title to undivided interests or adverse claims in 3,200 acres of land, more or less, a part of leagues Nos. 6 and 9 of the Martinez 11-league grant in Liberty county. On the date mentioned Mansfield conveyed his interest to Ferguson, and by an instrument of date January 20, 1919, it was agreed by the parties that, in lieu of the consideration recited in said deed, Mansfield would accept an interest in a contract of sale of the land made by Ferguson with the Dayton Lumber Company. This last-mentioned contract provided, in substance, that the Dayton Lumber Company would pay $48,000 for the land in six yearly installments of $8,000 each, evidenced by notes or bonds of the company, the last three of said notes to be held in escrow and not delivered to appellant Ferguson until certain specified adverse claims to the land had been settled by Ferguson by suit or otherwise.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On May 4, 1912, Ferguson and Mansfield executed a contract which, after reciting the fact that they were jointly interested in the three notes for $8,000 each, executed by the Dayton Lumber Company as part consideration for the conveyance of said land and then held in escrow, contains the following agreement as to the ownership and disposition of the proceeds of said notes:

"There shall first be paid to the owner or holder of one certain note for the sum of twenty-five hundred dollars ($2,500.00), executed by the said James E. Ferguson and payable to the order of H. P. Mansfield, attorney; said note being given in payment for the interest of the Davis heirs in land purchased by the said James E. Ferguson, and in turn sold to the Dayton Lumber Company.

"Second. There shall be paid to C. F. Stevens the sum of three thousand dollars ($3,000.00) in full settlement of his attorney's fees and all his interest in said notes and the land for which the same were given in payment.

"After the payment of said twenty-five hundred dollar ($2,500.00) note to H. P. Mansfield, and the payment of said three thousand dollars ($3,000.00) to C. F. Stevens, it is agreed by and between the parties that the remaining balance of twenty-one thousand five hundred dollars ($21,500.00) and all accrued interest on said bonds which may be collected by said Temple State Bank shall be owned by the following parties in the following proportion, that is to say:

James E. Ferguson as assignee and
　agent and attorney in fact for
　the Hardin heirs has an inter-
　est of........................$4,625 00
H. P. Mansfield, individually, has
　an interest of.................5,203 00
James E. Ferguson has an inter-
　est of........................5,203 00

—leaving a remaining interest of thirty-four hundred sixty-eight and 75/100 ($3,468.75) dollars, one-half of which amount the said Temple State Bank shall be authorized and required to pay over to the said James E. Ferguson when collected; the remaining one-half interest in said sum of thirty-four hundred sixty-eight and 75/100 ($3,468.75) dollars to remain on deposit in said Temple State Bank until the said James E. Ferguson shall be relieved from liability on a possible claim of what is known as the Stearns heirs by all statutes of limitation or otherwise. During which said time said sum shall remain on deposit in the Temple State Bank, said Temple State Bank shall pay interest thereon at the rate of four per cent. per annum, and the said James E. Ferguson agrees to pay in addition interest at the rate of two per annum, and when the said James E. Ferguson shall be relieved from said possible claims of said Stearns heirs by all statutes of limitation, the said Temple State Bank and said James E. Ferguson agree to pay the said Mansfield said amount, together with all interest accrued thereon.

"Whereas, said three bonds, above described, mature at different periods; and whereas, the Dayton Lumber Company under certain options in said bonds will make partial payments on same—it is agreed that the said Temple State Bank shall make proportionate disbursements of said funds as they are collected according to the several proportions above mentioned; and should the said Dayton Lumber Company under said options pay the sum of two thousand dollars ($2,000.00) then said two thousand dollars ($2,000.00) shall be disbursed among the several parties owning an interest therein in the above-named proportion.

"It is agreed in case said Dayton Lumber Company shall fail to pay said twenty-four thousand dollars ($24,000.00) of bonds, under the terms of said escrow agreement in said Lumberman's National Bank, that the land mentioned in said escrow agreement shall revert to, and be owned by, the parties mentioned herein in the respective proportions above mentioned.

"It is further understood and agreed that the said James E. Ferguson shall have and retain control of the litigation now pending in reference to the land sold to the said Dayton Lumber Company, which said litigation shall be prosecuted by the said James E. Ferguson with reasonable dispatch, and the said James E. Ferguson is hereby allowed to expend as much as two hundred and fifty ($250.00) dollars at his discretion in the management of said litigation for the joint account of the said James E. Ferguson and the said H. P. Mansfield, and if it should become necessary to make any expenditures exceeding two hundred and fifty ($250.00) dollars it shall not be done without the consent of said H. P. Mansfield, one half of said sum so expended to be paid by each party."

This contract was agreed to and accepted by the Temple State Bank.

The petition in this suit, which is complex and voluminous, alleges the execution of the contracts and agreements above mentioned, all of which are attached as exhibits, and the payment by the Dayton Lumber Company to the Temple State Bank of the principal and interest due upon the three notes for $8,000 each, except the sum of $6,700, which amount was due and unpaid by said Lumber Company, and that the said James E. Ferguson and the Temple State Bank had failed and refused to account and pay to the plaintiff his proportion of said money in accordance with their contract and agreement before set out. Recovery is asked on the $2,500 note, and for the other amounts which the contract states the plaintiff is entitled to receive out of the proceeds of said notes.

It is further alleged that at the time said contract was executed plaintiff and defendant James E. Ferguson had a settlement with each other of their respective interests in the first three of the notes of the Dayton Lumber Company for $8,000 each, which had theretofore been paid by said company, and that in making said settlement plaintiff was not informed that the Lumber Company had paid the sum of $1,318.67 interest on said notes, and said interest was not taken into account

in effecting said settlement; while, under the agreement between plaintiff and defendant, after deducting 1/14 of the $1,318.67 to which the Hardin heirs were entitled, plaintiff was entitled to one-half the remainder, which amounts to the sum of $520, for which sum plaintiff prayed judgment.

It was also alleged that at the time said settlement was had and said agreement entered into the defendant Ferguson advised plaintiff that he had contracted and agreed to pay C. F. Stevens the sum of $6,000 as compensation for his services as attorney in representing said defendant and plaintiff in perfecting the title to the land, when in truth and in fact Stevens had agreed to accept $4,400 as compensation for said services; that $3,000 of said amount had then been paid to Stevens, and plaintiff, relying upon the representation of said defendant as to amount due Stevens, agreed that he should be paid an additional $3,000 out of the proceeds of the last three of said $8,000 notes. Plaintiff asked that Ferguson be required to account to him for his interest in the difference between the supposed fee of $6,000 and the amount actually due said Stevens.

The petition further alleged that in the suit brought by defendant Ferguson to clear the title to the land parties holding adverse claims had recovered 509.4 acres of the land, and under the agreement with the Dayton Lumber Company said company was entitled to retain out of the amount due upon its notes a sum equal to the value of said 509.4 acres at the price per acre at which the land had been sold to said company; that Arch McDonald, Duval West, and Mrs. Mary McDonald, the parties who had recovered said 509.4 acres, on or about June 10, 1917, entered into an agreement with plaintiff and the defendant Ferguson to accept the sum of $7,200 for said 509.4 acres of land, and convey same to Ferguson, and the Dayton Lumber Company agreed to accept said conveyance of said parties, and release any interest in the funds in the hands of the Temple State Bank, and pay the balance due it on said bonds; that in accordance with said agreement the said McDonalds and West executed deeds to the said Ferguson conveying said lands, but that after said contract was entered into, and the deeds executed, Ferguson refused to permit the $7,200 "necessary to make said purchase" to be paid out by the Temple State Bank, and refused to pay the same himself; that plaintiff did not have sufficient funds to make said payment, and could not procure the same, and therefore the deeds could not be procured from said McDonalds and West to the Dayton Lumber Company, and a release procured of the interest of the Dayton Lumber Company in the fund in controversy, and in consequence thereof the Dayton Lumber Company

is claiming a deduction of $14.72 per acre upon 509.4 acres, with interest thereon, aggregating $10,000; and that if the Dayton Lumber Company should establish its right to the deduction of the difference between $7,200 and $10,000, and should establish its right to make a deduction of said amount, plaintiff would be compelled to contribute his pro rata thereof, and the said Ferguson "is liable to all parties at interest therefor," because of his failure to pay said $7,200, "and thereby save the difference."

Plaintiff also asked to recover the sum of $605 to cover expenses incurred by him in assisting in clearing the title and in the litigation brought therefor. An itemized statement of these expenses was attached to the petition as an exhibit.

Plaintiff also asked recovery against the defendant bank for the sum of $972, with interest, which amount it was alleged had been deposited in said bank by plaintiff in escrow to protect the defendant Ferguson against certain claims against the land, which had since been settled or had become barred by the statute of limitation.

It was further alleged that the defendants Temple State Bank and James E. Ferguson had failed and refused to make any distribution of the fund in the hands of the bank, and refused to give plaintiff any information as to the amount of said fund, or in whose name it was deposited, and that plaintiff feared—

"That said fund is in danger of being lost, diverted, misapplied, and put beyond the reach of plaintiff and of this court, and that an emergency exists for the immediate appointment of said receiver to obtain possession of said fund and hold the same to await the further orders of this court upon a final hearing hereof, and that plaintiff has no other remedy by which he can be protected from injury, but that he will in all probability lose the entire amount of said fund unless said receiver is appointed at once, and that delay to await notice to defendants will cause irreparable injury."

The defendant Ferguson answered by general demurrer and general denial, and by numerous special exceptions and pleas, the nature of which, so far as may be necessary to an understanding of the questions presented by this appeal, will be hereinafter indicated.

The defendant bank answered by general demurrer and general denial, and adopted as its own the special exceptions and pleas of the defendant Ferguson.

The defendants West and McDonald answered, claiming under an agreement with the Dayton Lumber Company a sufficient amount of the fund to pay for the 509.4 acres of land at the price of $13.50 per acre, that being the price per acre for which the land

was sold by defendant Ferguson to said Lumber Company.

The defendant Lumber Company paid into the registry of the court the balance due upon its notes, and by its answer admitted its agreement with the defendants West and Mc-Donald, and asked that said agreement be enforced.

The defendant Stevens filed no answer. The answers of other defendants need not be stated.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff against the defendants Ferguson and Temple State Bank jointly and severally for the sum of $5,490, and in favor of plaintiff as attorney in fact for the Davis heirs against said defendants for the further sum of $2,500, the amount of the note sued on, and in favor of plaintiff against the defendant bank for the $1,172. Plaintiff was also awarded the sum of $2,722.44 out of the sum paid into the registry of the court by the defendant Lumber Company. Judgment was also rendered in favor of the defendants West and McDonald against the defendants Ferguson and the Temple State Bank for the sum of $7,724.94, and said West and McDonald were further adjudged entitled to $1,893.-66 out of the money paid into the registry of the court by the defendant Lumber Company. $2,000 of the fund so paid into the registry of the court was ordered held by the clerk to await the result of certain suits for taxes which were pending against the land. Judgment was also rendered in favor of the defendant Stevens against the defendants Ferguson and Temple State Bank for the sum of $500.

The judgment further recited that C. W. Wharton had been appointed receiver, but had never come into possession of any property or funds, and that he be discharged as such receiver, and allowed the sum of $100 as compensation for his services, to be taxed as costs in the case, and paid by the Temple State Bank in the event the appointment of said receiver should be affirmed by the Court of Appeals, and, if not, then same should be paid by the plaintiff, defendants West, Mc-Donald, and Dayton Lumber Company.

This appeal is prosecuted by the defendants Ferguson and Temple State Bank.

There was conflicting evidence upon some of the fact issues in the case, but there was sufficient evidence to sustain all of the fact conclusions upon which the judgment of the trial court is based.

We shall not set out nor discuss all of the numerous assignments presented in appellants' brief, but will decide all of the questions presented which we think material.

The first six assignments complain of that portion of the judgment awarding plaintiff recovery for the sum of $600 expenses incurred by him in furthering the interest of himself and defendant Ferguson in the matter of clearing the title to the land, on the ground that neither the pleading nor the evidence is sufficient to show plaintiff's right to recover said amount. The petition contains the following allegations:

"Plaintiff further shows to the court that he has disbursed, as part of the necessary expenses incident to the settlement of the litigation as to said land so owned by him and the said James E. Ferguson, and sold to the Dayton Lumber Company, the sum of $605 as shown by itemized statement attached hereto and marked Exhibit H; that all of said, expenses so set forth in said exhibit, and aggregating the sum of $605, this plaintiff alleges were expended by him at the special instance and request of the said James E. Ferguson, said request being made to plaintiff both verbally and by letters of the said James E. Ferguson previous to the payment thereof, and with the understanding and agreement between the said James E. Ferguson and plaintiff that plaintiff should be reimbursed for such expenditures, and this plaintiff alleges that said amounts so expended were paid out for the benefit of this plaintiff and the defendant James E. Ferguson, and were necessary to the conduct of the litigation of the state of Texas v. The Dayton Lumber Company, which involved the land sold to the said Dayton Lumber Company, covering costs of court, surveys, and other expenses, and plaintiff alleges that by reason of said expenditures for the benefit of himself and the said defendant Ferguson, made at the special instance and request of the said Ferguson, and for the joint benefit of said Ferguson and this plaintiff, said plaintiff is entitled to be reimbursed for said sum of $605 out of the funds in the hands of the Temple State Bank."

[1] We think these allegations are amply sufficient to show plaintiff's right to recover the expenses claimed by him. While the itemized bill of expenses attached to the petition does not on its face show the purpose for which all of the several amounts therein named were expended, nor the date of each of said expenditures, such particularity was not necessary, in view of the allegations of the petition of the purpose for which they were expended, and that each and all of them were made at the special instance and request of the defendant Ferguson. One of the contracts between the parties which was referred to by the petition provides that from the proceeds of timber from the land shall be deducted:

"First. All moneys spent in perfecting, buying, and acquiring title from adverse claimants to the land mentioned in said contract, * * * and all moneys advanced by either of the parties shall stand secured."

The plaintiff testified:

"I regard those expenditures as entirely necessary, and they were all made in the joint

work, with no apprehension of their being questioned—in the joint co-operation of James E. Ferguson."

In regard to the item, "Various trips to Austin, $125.00," and "Maps made in Austin, $21.00," and "Submission of case at Beaumont, $16.00," plaintiff testified:

"I will try to explain to you the circumstances of each item and what my authority for the expenditure was. Mr. Ferguson was present and co-operating with me in this entire work, acquiescing in and agreeing to the expenditures, and insisting on my remaining and working out the case and maps."

[2] We think the evidence was amply sufficient to show that all of the expenditures for which reimbursement was claimed were made in perfecting the title to the land, and, under the provisions of the contract above quoted, were proper charges against the proceeds of the sale of the land.

[3] The seventh assignment of error complains of the refusal of the court to sustain exceptions to a paragraph of the petition in which plaintiff claims a deduction from an amount charged against the joint fund by defendant Ferguson to cover payment made by him on a judgment against the land. The question presented by this assignment is wholly immaterial, because the deduction claimed by the plaintiff was not allowed by the court, and the error, if any, in overruling the exceptions was cured by the judgment.

Under other assignments of error appellants complain of that portion of the judgment requiring the defendant Ferguson to account for the $1,600 difference between the fee of $6,000 to Judge Stevens, with which the joint account was charged, and the $4,400 actually paid and agreed to be paid. The contention under this assignment is that the undisputed evidence shows that the parties had agreed to pay Judge Stevens $6,000 out of the proceeds of the sale of the land, and that after $3,000 had been so paid Stevens sold his remaining interest in the fund to defendant Ferguson for $1,400, and said defendant was entitled, as assignee of Stevens, to receive from the proceeds the amount originally agreed to be paid Stevens.

· [4] This contention cannot be sustained. Waiving the moral or legal right of one of the co-owners of the fund held under the contracts shown in this case, to obtain any individual benefit from discounting a claim for services rendered for both of the parties in furtherance of their joint enterprise, clearly no such claim can be allowed in this case, because the evidence shows that when plaintiff agreed to the fee of $6,000 the defendant already had settled with Judge Stevens, and plaintiff was not informed of such fact. Plaintiff testified:

"He distinctly represented to me that he was to pay Judge Stevens $6,000. The negotiations for that contract of May 4, 1912, were pending at that time. I had no knowledge of what Judge Stevens' fee was to be except what Governor Ferguson represented to me. * * * I relied upon his statement. I certainly would not have agreed to have paid a man who was serving the joint parties more than that that was paid him had I not been deceived."

[5] Complaint is also made of the judgment in favor of plaintiff for the difference between the sum for which the defendants Duval West and McDonald had agreed to sell the 509.4 acres of the land recovered by them to Ferguson and the amount recovered by them in this suit by reason of Ferguson's breach of his contract with the plaintiff and defendants West and McDonald to purchase said land.

We think the conclusion of the trial court upon this issue was correct. The evidence shows that all of the parties in interest had agreed that the land would be conveyed to Ferguson at a price of $7,200, if said amount was promptly paid to the vendors. The money to make this payment was in the Temple State Bank, and subject to be so applied by the consent of defendant Ferguson and plaintiff. In pursuance of the agreement the deed to the land was executed and ready for delivery, but defendant Ferguson, in violation of his agreement, refused to pay the money when demand was made therefor. As a direct result of this breach of his agreement by the defendant Ferguson, the plaintiff sustained the loss of his proportion of the saving that would have resulted to said defendant and himself by purchasing the land at the price it was offered, and thereby being relieved of their contract by which the Lumber Company was entitled to a credit on their notes for the amount it had agreed to pay for the land. "As a general rule the measure of damages for breach of a contract to pay or deliver money at a stipulated time is the principal sum due, with legal interest thereon, and this regardless of the amount of inconvenience sustained by reason of such breach. In such case no recovery can be had for the profits which might have accrued to the plaintiff by the use of the money in addition to the interest, nor for mental suffering resulting from the failure to pay or deliver it as agreed. There are, however, certain exceptions to the rule which limits the recovery to the principal sum with interest, a familiar example being that a bank is liable for compensatory damages in addition for a refusal to pay a check when the drawer has sufficient funds in the bank for that purpose. So, too, special circumstances may sometimes justify the recovery of special damages, as where the obligation to pay money is special, and has reference to other objects than the mere

discharge of a debt." Ruling Case Law, vol. 8. p. 643.

The facts of this case bring it within the exception last stated in the above quotation.

The obligation to make this payment was special. The fund out of which the payment was to have been made was a special fund provided by the parties for that purpose, and when the defendant, who had control of the fund, refused to apply it in accordance with the agreement, he did more than breach an ordinary contract for the payment of money in discharge of a debt, and should be held liable for all loss directly occasioned by his breach of contract, such loss being clearly in contemplation of the parties at the time the agreement was made, as the probable result of its breach.

The only remaining contention of appellants which we deem it necessary to discuss is presented under assignments attacking the ruling of the court upon the question of whether the Davis heirs and Hardin heirs were necessary parties to this suit.

This question was raised by exception to the petition on the ground that the suit being one for partition of a fund in which, as shown upon the face of the petition, the Davis and Hardin heirs had an interest, said heirs were necessary parties to the suit.

Appellants also filed a motion to continue the case for the purpose of having the Davis heirs made parties to the suit, on the ground that said heirs were claiming a portion of the sum claimed by plaintiff in this suit, and were threatening to institute suit therefor. In the application for continuance it is alleged:

"That the plaintiff, by his second amended original petition, seeks to have a partition and distribution of certain funds as between all the parties interested in or asserting claims thereto, and that if the theory of the plaintiff should be sustained, and a partition of said funds decreed as prayed for, the defendant Ferguson, for his own protection, and for the protection of others having claims in or upon said funds, was entitled to have before the court all parties interested in or having claims against said funds, in order that their rights, claims, and equities might be determined and concluded and a complete partition and distribution of said funds effected; and that it appeared from plaintiffs' petition and the exhibits attached thereto that certain parties, known as the Davis heirs, whose names and residences were alleged and set out in paragraph 23 of the defendant Ferguson's second amended original answer, and in Exhibit A, attached thereto, were the real beneficial owners of and entitled to the $2,500 note described in plaintiff's petition, and payable to the plaintiff as attorney in fact for said Davis heirs; that said Davis heirs were asserting an interest in and a claim upon the funds sought to be partitioned and distributed, and that the defendant Ferguson had been served with a notice of said claim since the first day of the term of court at which said application was presented. Said application referred to and made a part thereof paragraph 23 of the defendant Ferguson's second amended original answer, and alleged that the allegations of said paragraph of said answer were true. Said application further alleged that some of said Davis heirs had advised the defendant that they intended to intervene in the cause and set up their rights, but they had not done so. Said application further alleged that the amended petition and the answers of the defendants Dayton Mills, Duval West, et al., and Houston National Exchange Bank, were filed during the term of court at which said application was presented, and that by reason of the condition of the record the applicant had not had an opportunity to make said adverse claimants parties. The applicant alleged that he expected to have said Davis heirs made parties by the next term of the court, and that the application was not made for delay only, but that justice might be done."

The application was sworn to by plaintiff in error Ferguson.

Paragraph 33 of the second amended original answer of the defendant Ferguson, which is referred to in the application for a continuance, is shown on pages 99 to 102 of the transcript, and shows that the $2,500 note sought to be recovered upon and have paid out of the funds in controversy was executed to the plaintiff Mansfield as attorney in fact for Mrs. Dock J. H. McCardell and others, whose names and residences are set out; that the same was executed in part payment of the purchase money for the land and premises sold by Ferguson to the Dayton Lumber Company, and which said note constituted a lien upon said land, in accordance with the terms of the deed attached to said answer, and marked Exhibit A. Exhibit A, attached to said answer, is a deed from Mrs. Dock J. H. McCardell and a number of others, by H. P. Mansfield, attorney in fact, to James E. Ferguson, and conveys parts of leagues 6 and 9 of the Martinez 11-league grant, and by the terms of which deed a vendor's lien was retained to secure the payment of the $2,500 note sought to be recovered upon by the plaintiff Mansfield.

It was further alleged in said paragraph of said answer that the said Ferguson had been notified by the parties named therein as grantors in said deed that they were claiming an interest in the funds in controversy by reason of their lien upon the land which was sold to the Dayton Lumber Company, and the funds in controversy constituting a portion of the purchase price therefor. And said answer contains a prayer that said parties be made parties to the suit in the event it should be determined that plaintiff was entitled to have a partition of the funds in controversy, in order that the rights and claims of said parties should be adjudicated and de-

termined, and such judgment entered as would protect said Ferguson against said parties and each of them.

[6] We do not think the court erred in overruling the exception to the petition nor the motion for continuance. The suit was not one for partition, but for recovery of a fixed and definite interest in a fund received and held by the defendants for distribution between the defendant Ferguson and plaintiff individually, and in their representative capacities as attorneys in fact for the Hardin and Davis heirs. Neither the pleadings nor the evidence raise any issue as to the genuineness of the powers of attorney under which these parties acted in making their agreements, nor the authority of the agents under the powers conferred to make and enforce the agreements.

The evidence adduced upon the trial shows that the allegation in the motion for continuance, that the Davis heirs were asserting claims adverse to the claim asserted by plaintiff or denied plaintiff's right to sue upon and recover the proceeds of the $2,500 note payable to him as attorney in fact for said heirs, were wholly unfounded, and, in view of this evidence, it cannot be held that the trial court abused its discretion in refusing to continue the case.

We have considered all of the assignments of error presented in appellants' brief, and in our opinion none of them should be sustained

The conclusions above stated require an affirmance of the judgment, and it has been so ordered.

Affirmed.