## FERGUSON et al. v. MANSFIELD et al.
### (No. 241–3432.)

(Commission of Appeals of Texas, Section A. Dec. 7, 1921.)

1. Escrows ⊕⇒9—Petition held to show modification of agreement entitling plaintiff to recover escrow.

A petition to recover an amount deposited in escrow to be paid to plaintiff in case the title to certain tracts of land was sustained, which alleged that the adverse claimants to those tracts were successful, but had agreed with the purchaser from plaintiff to convey the property to it and accept a proportionate part of the price, held to show plaintiff's right to distribution of the escrow fund, notwithstanding failure to perfect title.

2. Bills and notes ⊕⇒457 — Attorney in fact can sue alone on note payable to him as such.

Where a note given for the purchase of land sold by an attorney in fact for certain heirs was made payable to the attorney in fact as such, he can maintain an action to recover the amount due on the note without joining therein the heirs for whom he was attorney.

3. Joint adventures ⊕⇒5(1) — Heirs represented by attorney in fact not necessary parties in suit to recover specific fund.

An objection to a suit to recover a portion of a fund arising from lands in which the parties had been jointly interested and held in escrow because the heirs for whom plaintiff was attorney in fact also had an interest in the fund and were not made parties to the suit is not sustainable, where the suit was not for partition of fund, but was to recover a definite interest therein held by plaintiff as attorney in fact.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by H. P. Mansfield against James E. Ferguson and others. Judgment for plaintiff, and directing a division of the balance of the fund in controversy among the defendants, was affirmed by the Civil Court of Appeals (215 S. W. 234), and defendant Ferguson and others bring error. Judgments reversed in so far as they awarded a sum to defendant C. F. Stevens, and reformed so as to increase the amount of the judgment for plaintiff proportionately, and affirmed as reformed.

Love, Wagner & Wagner, of Houston, for plaintiffs in error.

L. B. Moody and Lewis R. Bryan, both of Houston, for McDonald and West.

Kittrell & Kittrell, of Houston, for defendants in error.

TAYLOR, P. J. In 1902 a number of persons, the heirs of James Davis, deceased, executed to H. P. Mansfield powers of attorney, authorizing him as their attorney in fact to sue for, recover, sell, and convey any land to which they might be entitled in leagues 6 and 9 of the Martinez 11-league grant in Liberty county. The only limitation upon the powers was that Mansfield could not make any sale or compromise without the approval of two of the heirs, J. V. Lea and C. B. Martin. These powers of attorney conveyed to Mansfield a one-half undivided interest in the lands which he might recover. James E. Ferguson also held a title to the land from the Hardin heirs. On January 14, 1910, Mansfield, as attorney in fact for the Davis heirs, and for himself, together with others not necessary to name, executed a deed to the land to Ferguson in consideration of $2,212 cash, and a note secured by a vendor's lien on the land for

$2,500, executed by Ferguson, payable to Mansfield, attorney. Lee and Martin joined Mansfield in the deed. It was recited in the deed to Ferguson that, whereas a part of the lands conveyed, known as the R. W. Shattuck locations, were claimed by certain adverse claimants, and it was contemplated that it would take some time to clear the title to that portion of the land, it was therefore agreed that the $2,500 note should not become due and payable until Ferguson or his associates should successfully litigate and defend his title to the Shattuck locations.

On January 13, 1910, Ferguson made a written contract with L. Fouts to sell him the timber on the land. On January 20, 1910, Ferguson and Mansfield entered into a contract whereby Mansfield agreed that in lieu of the cash consideration recited in the deed of the Davis heirs, himself, and others, he would accept an undivided one-half interest in the proceeds of the sale of the timber to Fouts under Ferguson's contract, after making certain deductions.

On August 1, 1911, Ferguson, acting for himself and Mansfield, sold the land to the Dayton Lumber Company. In payment therefor the lumber company executed its six first mortgage bonds for the sum of $8,000 each secured by vendor's lien on the land. The first three of the bonds were paid according to the terms of the contract of sale. On the date of the execution of the bonds the lumber company and Ferguson entered into an escrow agreement, by the terms of which the three last maturing bonds of the series were placed in escrow in the Lumbermen's National Bank of Houston to await the termination of the adverse claims made to the Shattuck locations. The agreement provided that in the event Ferguson within the time specified should successfully maintain his title to the Shattuck locations title, the bonds should be delivered to him by the bank; but that in the event he should not successfully maintain his title the bonds should be delivered to the Dayton Lumber Company, and all claim of title to the Shattuck location lands should then revert to Ferguson. The agreement further provided that in the event the lumber company should desire to cut and remove timber from the land in dispute before the title thereto had been adjudicated, it should have the right to do so by depositing certain sums of money in the Temple State Bank, such money to be held by the bank to await the termination of the litigation over the title to the lands in dispute; that in the event Ferguson's title should be maintained, then the money should be paid to him and applied in payment of said notes or bonds; but in the event Ferguson should fail to maintain his title the money should be redelivered by the bank to the lumber company.

On May 4, 1912, Ferguson, Mansfield, and the Temple State Bank entered into a contract, providing, among other things, that in the event Ferguson under the terms of the escrow agreement should become entitled to the bonds held by the Lumbermen's Bank, they should be delivered to the Temple State Bank instead of Ferguson. The contract provided further that they should be collected by that bank; and that in the event the bonds were delivered to the Temple Bank the proceeds thereof should be distributed as follows:

"There shall first be paid to the owner or holder of one certain note for the sum of twenty-five hundred dollars ($2,500.00) executed by the said James E. Ferguson and payable to the order of H. P. Mansfield, attorney; said note being given in payment for the interest of the Davis heirs in land purchased by the said James E. Ferguson, and in turn sold to the Dayton Lumber Company.

"Second. There shall be paid to C. F. Stevens the sum of three thousand dollars ($3,000.00) in full settlement of his attorney's fees and all his interest in said notes, and the land for which the same were given in payment.

"After the payment of said twenty-five hundred dollars ($2,500.00) note, to H. P. Mansfield, and the payment of said three thousand dollars ($3,000.00) to C. F. Stevens, it is agreed by and between the parties that the remaining balance of twenty-one thousand five hundred dollars ($21,500.00) and all accrued interest on said bonds which may be collected by said Temple State Bank, shall be owned by the following parties in the following proportion, that is to say:

| | |
|---|---|
| James E. Ferguson, as assignee and agent and attorney in fact for the Hardin Heirs, has an interest of | $4,625.00 |
| H. P. Mansfield, individually, has an interest of | 5,203.00 |
| James E. Ferguson has an interest of | 5,203.00 |

—leaving a remaining interest of thirty-four hundred sixty-eight and 75/100 ($3,468.75) dollars, one-half of which amount the said Temple State Bank shall be authorized and required to pay over to the said James E. Ferguson when collected; the remaining one-half interest in said sum of thirty-four hundred sixty-eight and 75/100 ($3,468.75) dollars to remain on deposit in said Temple State Bank until the said James E. Ferguson shall be relieved from liability on a possible claim of what is known as the Stearne heirs by all statutes of limitation or otherwise."

It was further agreed that in case the Lumber Company should fail to pay the $24,000 of bonds under the terms of the escrow agreement, the land mentioned should revert to and be owned by the parties mentioned in the respective proportions stated above.

This suit was filed by Mansfield against Ferguson and the Temple State Bank to recover $13,883.30, which Mansfield alleged to be his interest individually, and as attorney in fact for the Davis heirs, in the fund col-

lected by the Temple State Bank under the agreement stated above.

Plaintiff alleged the payment by the lumber company to the Temple Bank of all principal and interest due upon the three $8,000 bonds except the sum of $6,700, and asked recovery on the $2,500 note. He alleged as a basis for further recoveries that after the payment of the first three bonds he and Ferguson made a settlement on the basis that the principal only of the three bonds had been paid, and that he made the settlement in ignorance of that fact, which was known to the bank and Ferguson; that the lumber company had paid, in addition to the principal of the bonds, interest thereon in the sum of $1,318.67. He alleged also that at the time of the settlement Ferguson advised Mansfield that he had agreed to pay C. F. Stevens the sum of $6,000 for his services as attorney in representing them in perfecting the title to the lands in dispute, when in fact Stevens agreed with Ferguson to accept $4,400 in full payment of his fee. Allegations were made also to the effect that the title to the lands in dispute had been finally adjudicated; that the result of the litigation was to divest the title to 509.4 acres of the land sold by Ferguson to the Lumber Company, out of Ferguson, and vest it in Arch MacDonald, Duval West, and Mrs. Mary MacDonald; that under the terms of the escrow agreement the Dayton Lumber Company had the right to deduct from the purchase money paid by it the sum of $14.72 per acre, being the pro rata portion that the acreage lost bore to the total consideration; that the MacDonalds and West after recovering the land, entered into an agreement with Mansfield and Ferguson to accept the sum of $7,200 for the land and convey it to Ferguson; that the Dayton Lumber Company agreed to accept the conveyance and release all interest in the funds in the hands of the Temple State Bank, and to pay the balance due by it on the bonds; that Ferguson refused to permit the $7,200 necessary to make the purchase of the lands to be paid out by the bank; that on account thereof the deeds could not be procured from the MacDonalds and West to the Lumber Company; that in consequence thereof the lumber company claimed a deduction of $14.72 per acre upon the 509.4 acres, with interest thereon, aggregating a total sum of $10,000, thereby entitling Mansfield to a recovery of his pro rata part of the difference between the sum for which the land could have been acquired, and the sum of $10,000, in the event the lumber company established its right to the deduction of the difference.

It was alleged as a basis for a further recovery that certain expenses had been incurred by Mansfield in assisting Ferguson in clearing the title to the lands in dispute, and that Mansfield had placed in escrow in the Temple State Bank the sum of $972 to protect Ferguson against certain claims of the Stearne heirs against the land, which had subsequently been settled.

In addition to the foregoing matters that were set up against plaintiffs in error, it was alleged, among other things, in the first amended original answer and cross-petition of the Dayton Mills (successor to Dayton Lumber Company) that the lumber company was about to proceed to cut the timber on the lands embraced in the Shattuck locations, but was stopped from doing so by Arch MacDonald, Mrs. Mary MacDonald, and Duval West, claimants of the disputed land; that the lumber company entered into an agreement with those asserting claims to the land under the terms of which the lumber company was allowed to proceed to cut the timber and make deposits in the Temple State Bank, substantially in accordance with the stipulations relating to such deposits hereinbefore stated; that by the terms of the agreement the claimants agreed that in the event they should recover the disputed lands they should convey them to the lumber company substantially in accordance with the terms and conditions under which Ferguson had conveyed to the lumber company, and that they should be paid therefor out of the funds deposited in the Temple Bank; that in effect there was conditionally assigned to them sufficient moneys deposited in the Temple Bank representing the acreage they might recover, for the purpose of paying for it; that the litigation concerning the title to the Shattuck locations had terminated, resulting in a recovery by the claimants against Ferguson of 509.1 acres; that the timber was cut upon the lands recovered, under and by virtue of the deed and collateral agreements referred to, whereby Duval West, Arch MacDonald, and Mrs. Mary MacDonald became entitled to their pro rata part of the moneys deposited in the bank and for their pro rata part of the moneys remaining unpaid; that the claimants recovering the land became bound and obligated to execute to the lumber company deeds therefor; that the lumber company was ready, able and willing to pay any balance remaining unpaid for the purchase price thereof; that both Ferguson and Mansfield agreed to the arrangements made for removing the timber. It was alleged that the lumber company deposited in the Temple State Bank the sum of $24,000, and owed a balance of $6,616.10 on the bonds, and that the balance due was subsequently deposited in the registry of the court. The allegations of the amended answer and cross-petition of the Dayton Mills were admitted to be true for the purpose of the trial by all of the parties, except the allegations made concerning an agreement that the Temple State Bank should hold a certain amount of the funds

paid it by the lumber company for the purpose of protection against tax claims. The allegations concerning the taxes were denied by Ferguson only, and were to the effect that a large amount of taxes was claimed on the lands described in the deed from Ferguson to the lumber company, and that suit had been filed for the collection thereof, which was still pending; that the amount of the taxes claimed was $1,883.10; that the lumber company entered into an agreement with Ferguson to withhold from the amounts remaining unpaid on the deed the sum of $2,000 as protection against the taxes claimed; and that neither Mansfield nor Ferguson was entitled to have the sum of $2,000 paid them unless the tax claims were satisfied.

Ferguson answered by general demurrer, general denial, and special exceptions and pleas raising the question of whether the Davis heirs and Hardin heirs were necessary parties to the suit; the contention being that it was shown upon the face of the petition that those heirs had an interest in the funds held by the Temple State Bank, and were therefore necessary parties.

A motion was filed by plaintiffs in error asking that the case be continued for the purpose of making the Davis heirs parties. It was alleged in the motion that defendant Ferguson, for his own protection and for the protection of others having claims in the funds, was entitled to have all parties interested therein before the court; and that the Davis heirs were asserting an interest in the funds held by the bank.

The Temple State Bank answered by general demurrer and general denial, and adopted the special exceptions and pleas of Ferguson. Defendants West and the MacDonalds set up in their answer a claim of $12.50 per acre for the 509.4 of land recovered by them. The lumber company deposited in the registry of the court the balance due upon the bonds, and admitted its agreement with defendants West and the MacDonalds as to the price at which the land was sold by Ferguson to it. C. F. Stevens did not file an answer.

The trial court found the facts substantially in accordance with the foregoing summary of the pleadings of defendants in error. Judgment was rendered that Mansfield recover from Ferguson and the Temple State Bank, jointly and severally, the sum of $5,490.06, and that he recover individually from the bank, separately, the further sum of $1,172, on account of the special deposit of $972, made by Mansfield to protect Ferguson against the claim of the Stearne heirs, which had finally been settled or barred; that Mansfield recover, for himself and as attorney for the Davis heirs, from the bank and Ferguson, jointly and severally, the sum of $2,500 in satisfaction of the note executed by Ferguson to Mansfield, attorney, and execute to the lumber company duplicate releases of the vendor's lien reserved to secure its payment; and, further, that the note be filed among the papers of the cause and remain as a record in the trial court; that Mansfield recover from the lumber company the sum of $2,722.44 as a part of the funds deposited in the registry of the court; that Duval West and Mrs. Mary E. MacDonald recover from Ferguson and the bank the sum of $7,724.94, and recover from the lumber company the sum of $1,893.66, a part of the $6,616.10 deposited in the registry of the court. It was further decreed that the clerk retain the sum of $2,000 of the deposit until the taxes sued for had been canceled or discharged. The court found further that there was a balance of $500 due defendant C. F. Stevens out of the funds deposited in the bank, and awarded judgment in his favor for that amount against the bank and Ferguson. The further decrees of the court in effect quiet the lumber company in its title to the land, and direct the execution of deeds and releases necessary to that end. The Court of Civil Appeals affirmed the judgment (215 S. W. 234), holding that there was sufficient evidence upon all of the fact issues in the case to sustain the conclusions of the trial court.

There was evidence to support the findings and judgment of the trial court as to the amounts awarded Mansfield individually and as attorney in fact for the Davis heirs, and the amounts awarded Mrs. MacDonald and Duval West; also to support the decree of the court directing the clerk to retain the sum of $2,000 of the deposit made in the registry of the court to cover taxes on the land. The allegations were sufficient to show Mansfield's right to recover the expenses incurred by him in assisting in clearing the title to the land in dispute, and there was evidence to sustain the judgment in his favor.

[1] Complaint is made in the third assignment in the application that it was error on the part of the trial court not to sustain the general demurrer of plaintiffs in error, for the reason that defendant in error's petition disclosed on its face that the funds were deposited with the Temple State Bank under agreements, by the terms of which they were not to become payable to defendant in error except upon the perfecting of the title conveyed by Ferguson to the Dayton Lumber Company to the land covered by the Shattuck locations title, and it affirmatively appeared that said title had not been so perfected. The sixth and seventh assignments of error make the same character of complaint as to defendant in error's right to recover on the $2,500 note until the conditions upon which it should mature have been complied with.

It appears from the pleadings that the lumber company was willing to take the title to the Shattuck locations from the adjudged owners, and to pay them in money, instead of paying it to Ferguson and Mansfield, and that the lumber company was willing to carry out its contract as to all the land; also that Mansfield and Ferguson entered into an agreement with the claimants of the land, by the terms of which claimants agreed to accept $7,200 in payment for their interest in the 509.4 acres, and that the lumber company agreed to accept the conveyance from the claimants and release any interest in the funds in the hands of the Temple State Bank, and pay the balance due by it on the bonds. The pleadings relating to the failure of Ferguson to permit the $7,200 to be paid for the land in accordance with the agreement have already been stated.

The allegations are sufficient to show that the money became distributable when conveyance had been made to the lumber company, regardless of whether title to the disputed lands was secured through litigation or through purchase. The alleged agreement that Mansfield and Ferguson had agreed to allow the claimants for the land out of the funds to be paid by the lumber company the amount that it actually cost to enable the lumber company to acquire the land from the claimants makes it apparent that it was contemplated by the parties that the title to the disputed lands might have to be procured for the lumber company through purchase.

[2] The fifth assignment of error complains that defendant in error, Mansfield, did not have a right to sue on the $2,500 note, alleging that the title of the note was not in Mansfield, but in the Davis heirs, and that the pleadings failed to show any authority upon his part to recover upon the notes either in his own right or for the benefit of the Davis heirs.

The $2,500 note was payable to Mansfield, attorney. The contracts and the escrow agreements made by Ferguson and Mansfield were made by them according to the allegations in their representative capacities as attorney in fact for the Hardin heirs and Davis heirs, respectively, as well as in their individual capacities. The general power to recover, sell, and convey under which Mansfield acted carried with it incidentally the power to sue for the purchase money. No attack was made upon the genuineness of the powers under which either Mansfield or Ferguson acted and the evidence, as well as the pleadings, discloses Mansfield's right to sue and recover in both his individual and representative capacities. Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95; Wimbish v. Holt, 26 Tex. 673; Allison v. Insurance Co., 87 Tex. 593, 30 S. W. 547.

[3] The first, second, and fourth assignments in the application complain of the nonjoinder of the Davis and Hardin heirs. Plaintiffs in error contend that they were necessary parties to the cause under the view that the suit was one to partition funds in which they were interested.

We concur in the holding of the Court of Civil Appeals that the Davis and Hardin heirs were not necessary parties to the suit, inasmuch as the suit was not one for partition, but for recovery of a fixed and definite interest in funds held by plaintiffs in error for distribution between Ferguson and Mansfield individually, and in their representative capacities as attorneys in fact for Hardin and Davis heirs, respectively.

In our opinion there was no error in the holdings of the Court of Civil Appeals upon the assignments discussed, and the court made no findings that would defeat recovery.

The Supreme Court in granting the writ made the following notation upon the docket:

"We fail to see how Stevens had any interest in the fund warranting the judgment in his favor against the plaintiffs in error, in view of the sale of his interest to Ferguson. Any balance due by Ferguson on his purchase of Stevens interest would, we think, be a personal liability, and the fund could not be charged with it."

Subsequently Stevens filed in the Supreme Court his waiver to any claim that he might have in the $500 awarded him, and consented that the Supreme Court might enter judgment, so far as his claim was concerned, reversing the judgment as to the $500, and rendering judgment against him.

The filing of the waiver and agreement by Stevens obviates the necessity of reviewing the assignment under which the writ was granted.

The judgment of the trial court recites that Mansfield's proportionate part of the $500 obligation was deducted in awarding the recoveries in his favor. It appears that Mansfield's pro rata part of the funds on deposit after making necessary deductions is $5203/15031$ of the amount remaining.

We recommend that the judgments of the trial court and Court of Civil Appeals, in so far as they award judgment in favor of C. F. Stevens for the sum of $500, be reversed, and that that part of the judgment be set aside; that the amount of the award in favor of H. P. Mansfield be increased by the sum of $106.42, or $5203/15031$ of $500; and that the judgment as reformed, and in all other respects, be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.